**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DONNA O'MALLEY, | : | Civil Action No. 04-5540 |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| SUN LIFE ASSURANCE COMPANY | : | |
| OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

**APPEARANCES**:

      Michael Sussen, Esquire
      Vincent J. Ciecka, P.C.
      Penn Oak Building
      5709 Westfield Avenue
      Pennsauken, NJ 08110-0560
          Attorney for Plaintiff

      Michael J. Zaretsky, Esquire
      Chorpenning, Good, Carlet & Garrison
      1135 Clifton Avenue
      Clifton, NJ 07015
          Attorney for Defendant

**RODRIGUEZ,** Senior District Judge:

      This case comes before the Court on Defendant's Motion for Summary Judgment

[11] and Plaintiff's Cross Motion for Summary Judgment [12].  For reasons set forth

below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Cross

Motion for Summary Judgment will be denied.

## I. BACKGROUND

The following facts are undisputed by both parties.  Plaintiff Donna O'Malley's

husband, James O'Malley ("O'Malley"), the decedent, was employed as an executive by

J.G. Wentworth & Company ("Wentworth").  (Def. Mot. Summ. J., Ex. 0005, 0014,

0046.)  His position made him eligible for Class 1 employee benefits, which provided for

life insurance benefits in the amount of $100,000 and accidental death and

dismemberment ("AD&D") insurance benefits in the amount of $100,000.  (Def. Mot.

Summ. J., Ex. 0005-0008, 0054, 0056.)  O'Malley designated Plaintiff as the beneficiary

under the insurance policy ("Policy").  (Def. Mot. Summ. J., Ex. 0005, 0016.)

On July 10, 1998, O'Malley became disabled and no longer able to work for

Wentworth.  (Def. Mot. Summ. J., Ex. 0046-48.)  O'Malley's employment terminated on

February 20, 1999.  (Def. Mot. Summ. J., Ex. 0045.)  O'Malley was eligible for continued

coverage because he was deemed totally disabled as defined under his Policy; however,

the extent of the coverage is at issue in this case.  (Def. Mot. Summ. J., Ex. 0046-0048.)

On April 20, 1999, Wentworth submitted a Group Life Insurance–Waiver of

Premium/Extended Death Benefit Claim ("Waiver of Premium") on behalf of O'Malley

to Defendant.  (Def. Mot. Summ. J., Ex. 0053.)  Defendant approved an extension of

O'Malley's life insurance coverage in accordance with the Waiver of Premium on

July 16, 1999, and again on August 3, 2001.  (Def. Mot. Summ. J., Ex. 0022, 0031.)  On

July 16, 1999, Defendant sent a letter to O'Malley, which stated that, "Sun Life of Canada

has approved an extension to your life insurance coverage for one more year, in

accordance with the Waiver of Premium provision in your group life insurance policy. . . .

Currently, you have $100,000 of group life insurance in-force [sic]."  (Def. Mot. Summ.

J., Ex. 0031.)  Defendant approved an additional extension in an August 3, 2001, letter,

which stated, "We have approved an extension of your Group Life Insurance Waiver of

Premium claim under the Group Policy listed above. . . .  Currently, you have $100,000 of

Group Life Insurance in force."   (Def. Mot. Summ. J., Ex. 0022.)

On October 25, 2001, O'Malley died when the ambulance in which he was being

transported was involved in a head-on collision.  (Def. Mot. Summ. J., Ex. 0017, 0019.)

On or about November 6, 2002, O'Malley's employer submitted claim forms to

Defendant for benefits under the Policy, selecting "Life," "Accidental Death," and

"Waiver of Premium" as the types of claims on the forms.  (Def. Mot. Summ. J., Ex.

0014-16.)  Defendant paid to Plaintiff the $100,000 life insurance benefit under the

Policy.  (Def. Mot. Summ. J., Ex. 0087, 0093.)  However, via letter dated

November 19, 2002, Defendant denied Plaintiff's claim for AD&D coverage because it

determined that O'Malley was only eligible to receive life insurance benefits under the

Waiver of Premium.  (Def. Mot. Summ. J., Ex. 0087, 0093.)

3

On January 10, 2003, Plaintiff appealed the denial of coverage and on

January 15, 2003, Defendant affirmed its decision denying the AD&D benefits.  (Def.

Mot. Summ. J., Ex. 0091, 0092.)  On January 17, 2003, Plaintiff requested an explanation

for the denial of AD&D benefits, and again on February 6, 2003, Defendant reaffirmed its

denial of coverage.  (Def. Mot. Summ. J., Ex. 0082-83, 0085-86.)

On October 12, 2004, Plaintiff filed a Complaint in the Law Division of the

Superior Court of New Jersey.  Plaintiff's Complaint alleges breach of contract (Count I),

negligence (Count II), breach of implied covenant of good faith and fair dealing and

failure to comply with the New Jersey Unfair Claims Settlement Practices Act; N.J. STAT.

ANN. § 17B:30-13.1 et. seq. (Count III), and failure to comply with the New Jersey

Consumer Fraud Act; N.J. STAT. ANN. § 56:8-2 (Count IV).  On November 12, 2004, the

case was removed to the District Court of New Jersey.

## II.  DISCUSSION

### A.  Preemption of State Law Claims by Employee Retirement Security Income Act

Defendant argues that Plaintiff's state law claims are preempted by the Employee

Retirement Income Security Act ("ERISA" or "the Act").  Plaintiff concedes this point in

her Cross Motion for Summary Judgment.  (Pl. Cross Mot. Summ. J. at 7.)  ERISA

preempts "any and all State laws insofar as they may now or hereafter relate to any

employee benefit plan" covered by the Act.  29 U.S.C. § 1144(a) (2000).  See also Pilot

Life Ins. Co. v. Deeaux, 481 U.S. 41, 57 (1987) (holding that ERISA completely preempts state common law claims seeking payment of benefits under an ERISA plan).

Therefore, Plaintiff's causes of action for breach of contract, negligence, breach of implied covenant of good faith and fair dealing, and violations of the New Jersey Unfair Claims Settlement Practices Act and the New Jersey Consumer Fraud Act are preempted. Accordingly, Counts I, II, III[1] and IV will be dismissed.

## B. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, a Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a

---

[1]Count III will survive to the extent that Plaintiff challenges the denial of her AD&D benefit under the applicable ERISA statutes, the only remaining cause of action in the Complaint.

dispute about the facts might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## C. Standard of Review under ERISA

ERISA provides that a plan participant or beneficiary may bring a suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA, however, does not specify a standard of review for an action brought under § 1132(a)(1)(B). See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997). The Supreme Court addressed the issue and determined that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

Where the plan affords the administrator discretionary authority, a district court's grant of summary judgment is made under an arbitrary and capricious standard. See Nazay v. Miller, 949 F.2d 1323, 1334 (3d Cir. 1991); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990). Under this standard of review, an administrator's decision

must be affirmed unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (quotations and citations omitted). A court is not free to substitute its own judgment for that of the administrator's in determining eligibility for plan benefits. Id. (citations omitted).

A heightened standard of review is required, however, when the structure of the ERISA plan presents a conflict of interest. See Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 383 (3d Cir. 2000). Where a plan fiduciary acts under a conflict of interest in making an eligibility for benefits decision, that decision is reviewed on a "sliding scale." Id. at 392. This sliding scale approach is deferential, but not absolutely deferential, and allows each case to be examined on its facts. Id. A court may consider "the nature and degree of apparent conflicts with a view to shaping [its] arbitrary and capricious review of the benefits determinations of discretionary decisionmakers." Id. at 393.

**D.  Which Standard of Review Applies to the Plan**

In deciding whether Defendant properly denied Plaintiff's claim, it first must be determined which standard of review applies–de novo, arbitrary and capricious, or the heightened arbitrary and capricious standard. To make this determination, two factors are considered: 1) whether the Plan gives the administrator discretionary authority to

8

determine eligibility for benefits or to construe the terms of the Plan; and, 2) whether there is a conflict of interest.

### 1.  The Plan Grants Administrators Discretionary Authority

Whether a plan grants an administrator discretionary authority to determine eligibility for benefits depends on the terms of the plan.  See Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 114 (3d Cir. 1994); Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991).  Here, the Plan the states that "proof of claim must be given to [Defendant] no later than 90 days after the date of death . . . [and that] [p]roof must be satisfactory to [Defendant]."  (Def. Mot. Summ. J. at Ex. 0077-0078.)  Moreover, the parties agree that the Policy granted Defendant this discretionary authority.  (Def. Mot. Summ. J. at 13-14; Pl. Cross Mot. Summ. J. at 7.)  Therefore, the Plan gives the administrator discretionary authority to determine eligibility for benefits and to construe its terms.

### 2.  The Plan Presents a Conflict of Interest

An employer typically structures an ERISA plan's administration, interpretation, and funding in one of three ways:

> First, the employer may fund a plan and pay an independent third party to interpret the plan and make plan benefits determinations. Second, the employer may establish a plan, ensure its liquidity, and create an internal benefits committee vested with the discretion to interpret the plan's terms and administer benefits. Third, the employer may pay an independent insurance company to fund, interpret, and administer a plan.

9

Pinto, 214 F.3d at 383.  Only the third type of ERISA plan structure constitutes a conflict of interest.  See id.  A conflict arises in "the insurance company-as-funder-and-administrator context [because] the fund from which monies are paid is the same fund from which the insurance company reaps its profits."  Id. at 378.  As a result, this type of insurance company has "an active incentive to deny close claims to keep costs down" and increase profits.[2]  Id. at 388.  The other two Plan structures do not typically constitute a conflict of interest.  Id. at 383.

Here, the Plan is the third structure type because Defendant both "funds and administers benefits under the Policy."  (Def. Mot. Summ. J. at 16.)  Moreover, Defendant does not demonstrate, how, if at all, this conflict of interest is ameliorated.  Therefore, Defendants's plan presents a conflict of interest.

### 3.  Heightened Arbitrary and Capricious Standard of Review Applies

A sliding scale method of review intensifies the degree of scrutiny to match the degree of conflict.  Pinto, 214 F.3d at 379.  A court will consider a conflict of interest to heighten its degree of scrutiny without actually shifting the burden away from the plaintiff.  Id. at 392.  Thus, although "a higher standard of review is required when

_____

[2]However, a conflict may be ameliorated where, for example, "the plan is experience-rated because the premiums charged to the employer are adjusted annually based on claims paid the previous year and thus the fiduciary's incentive to deny claims to increase profits is lessened, if not eliminated."  Metropolitan Life Ins. Co. v. Potter, 992 F. Supp. 717, 730 (D.N.J. 1998), cited in Pinto, 214 F.3d at 388 n.6.

reviewing benefits denials of insurance companies paying ERISA benefits out of their own funds," id. at 390, the burden of proving to what degree the conflict of interest affected the insurance company's decision rests on the plaintiff," id. at 392.  In determining the degree of conflict, a court may consider "[1] the sophistication of the parties, [2] the information accessible to the parties, . . . [3] the exact financial arrangement between the insurer and the company, . . . [and] [4] the current status of the fiduciary."  Id.

In Pinto, the Third Circuit held that a court applying a heightened arbitrary and capricious standard of review was to remain deferential, but not absolutely deferential. Id. at 393.  To determine how much deference should be given to the plan administrator, the reviewing court should integrate the conflicts presented to "approximately calibrat[e] the intensity of [the court's] review to the intensity of the conflict."  Id.  "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard."  Id. at 393 (quoting Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999)).  Thus, a court may look not only whether the result reached was reasonable, but also whether the process by which that result was achieved was reasonable.  Id.

Here, the burden is on Plaintiff to demonstrate how the conflict of interest affected Defendant's decision to deny her claimed benefits.  Although Plaintiff does not address the four factors enumerated in Pinto, Defendant is incorrect that this Court is free to apply

11

no heightened standard of review.  However, the Court may apply only a mild form of the

heightened arbitrary and capricious standard of review.  See Lasser v. Reliance Standard

Life Ins. Co., 146 F. Supp. 2d 619, 623 (D.N.J. 2001), aff'd, 344 F.3d 381 (3d Cir. 2003)

(finding "the beginning of Pinto's sliding scale of heightened arbitrary and capricious

review lies but a modest distance from the original standard, and that, absent other

evidence of bias, the Court should engage in no more that a modicum of additional

scrutiny").  With no further evidence of the conflict of interest presented by Plaintiff

beyond the inherent structural conflict of interest, a moderate degree of deference will be

given to Defendant's policy determinations.  Therefore, while mindful of the slightly

heightened standard of review, the Defendant's decision must be upheld unless it was

without reason, unsupported by substantial evidence, or erroneous as a matter of law.

## E.  Review of Defendant's Interpretation of the Policy

The heightened arbitrary and capricious standard of review will be applied to

Defendant's benefits decision because the Plan grants discretionary authority to its

administrator and presents a conflict of interest.  In reviewing an administrator's benefits

decision under the heightened arbitrary and capricious standard, a court is not free to

substitute its own judgment for that of the benefits administrator's judgment in

determining eligibility for plan benefits.  See O'Sullivan v. Metropolitan Life Ins. Co.,

114 F. Supp. 2d 303, 309 (D.N.J. 2000) (quoting Mitchell v. Eastman Kodak Co., 113

F.3d 433, 440 (3d Cir. 1997)).  Instead, a court must review the same record the

administrator considered when making the decision to deny benefits.  Mitchell, 113 F.3d

at 440.  The relevant record a court must review consists of the evidence that was before

the administrator at the time of the final denial.  Id.

### 1. What Constitutes the Relevant Record

"Exceptions to th[e] general rule [outlined above] are appropriate where the

evidence outside the administrative record is related to interpreting the plan or explaining

medical terms and procedures relating to the claim. . . .  The Court is only precluded from

receiving evidence to resolve disputed material facts, for instance, 'a fact the

administrator relied on to resolve the merits of the claim itself.'"  O'Sullivan, 114 F. Supp

2d at 310 (quoting Vega, 188 F.3d at 299-300).

In O'Sullivan, the court, in its review of the Plan's benefits decision, considered

portions of a treating doctor's deposition testimony, which was taken after the plan

administrator's final decision.  Id. at 310.  The court found that those portions of the

testimony that were within the knowledge of the plan administrator could be considered

because they would aid the court in interpreting the documents before the administrator at

the time of its decision.  Id.  The court did not consider those portions of the testimony

that were beyond the scope of the administrative record.  Id. at 310-11.

Defendant made its final decision regarding O'Malley's insurance coverage on

February 6, 2003, and the parties are limited to materials before the administrator on that

date.  The parties dispute whether this Court may review the Affidavit of Marianne Evans

("Evans"), dated July 12, 2005.  The affidavit itself was not part of the administrative

record because the final decision by Defendant regarding O'Malley's insurance coverage

was on February 6, 2003.  Therefore, the affidavit can not be considered in its entirety

because Evans does not explain procedures related to the claim.

However, the Court will consider those portions of the affidavit that were within

the scope of the record before the administrator at the time of the decision.  Therefore, the

Court will consider paragraphs 2-8 in Evans's Affidavit; however, the Court will not

consider paragraphs 1, 9[3] and 10[4] in Evans's Affidavit because these events were beyond

the scope of the administrative record.

### 2.  Documents Outside the Relevant Record

Although Plaintiff acknowledges that the general rule is "that judicial review of

benefit decisions ordinarily 'should be based on the record available to the [P]lan

administrator in making its own decision,'" (Pl. Cross Mot. Summ. J. at 8) (quoting

Kosiba v. Merck & Co., 384 F.3d 58, 69 (3d Cir. 2004), she argues that the Court's

---

[3]  Paragraph 9 in Evans's Affidavit is troubling because the event does not have a
date indication, though intuitively it would appear that this event occurred prior to
Defendant's final benefits decision on February 6, 2003.  (Pl. Cross-Mot. Summ. J., Ex.
B.)  Paragraph 9 includes neither the date of the conversation, the name of the person
with whom Evans claims she spoke, nor the details of the alleged conversation.  Because
the provision is too vague and amounts to a general allegation, the Court will not consider
Paragraph 9 of Evans's Affidavit.

[4]In paragraph 10, Ms. Evans's conversation with the O'Malleys regarding her
understanding the impact of O'Malley's disability on his employment benefits would not
have been in the administrative record before the plan administrator.

judicial review of Defendant's benefits decision in this case is not limited to the administrative record, (Pl. Cross Mot. Summ. J. at 8).  For this proposition, Plaintiff relies on Otto v. Western Pennsylvania Teamsters and Employers Pension Fund, 127 Fed. Appx. 17 (3d Cir. 2005); however, her reliance is misplaced.

   In Otto, the plan participants argued that the magistrate should not have relied on two affidavits that were not part of the record before the plan administrator.  The Third Circuit, in a footnote, stated that "[e]vidence beyond the administrative record may in certain circumstances be relevant and admissible as to issues that were not before the plan administrator–such as trustee conflict of interest, bias, or a pattern of inconsistent benefits decisions."  Id. at 21 n.7 (citing Kosiba, 384 F.3d at 67 n.5) (emphasis added).  However, the court found it unnecessary to decide whether the magistrate erred by including those affidavits, reasoning that "irrespective of the disputed evidence, the trustees' interpretation of the plan is reasonable."  Id.

   Plaintiff argues that this case is governed by the footnote in Otto under the pattern of inconsistent benefits decisions exception.  To the extent that this Court may consider evidence of a pattern of inconsistent benefits decisions by Defendant, the Court finds that Plaintiff has failed to present sufficient evidence to establish that Defendant has engaged in a pattern of inconsistent benefits decisions.  Defendant, throughout its review of Plaintiff's claim for the AD&D benefits, consistently denied her claim for the same reasons.  The evidence Plaintiff offers to establish an inconsistent pattern consists of

15

examples of how Plaintiff and O'Malley's employer misunderstood or misconstrued the policy; however, this does not establish a pattern of inconsistent benefits decisions by Defendant.  Moreover, Plaintiff has proffered no evidence that Defendant may have treated other insurance beneficiaries differently from her, resulting in a pattern of inconsistent benefits decisions.  Therefore, Otto does not allow introduction of the additional documents in this case.

### 3.  Review of Defendant's Interpretation of the Policy

The central issue of this case is the interpretation of the terms used in the Policy and whether Defendant's construction of those terms was reasonable under the heightened arbitrary and capricious standard of review.  Both Plaintiff and Defendant have argued that the Policy is unambiguous, yet both parties have entirely different interpretations regarding the Policy's claimed unambiguous provisions and whether O'Malley was still covered for AD&D benefits under these provisions after signing the Waiver of Premium.

Although traditional insurance contract interpretation rules in New Jersey require that ambiguous terms be construed against the insurer, interpretation of ERISA benefits plans that give the plan administrator discretionary authority to construe the terms of the plan does not follow the principle of contra proferentem.  Instead, a plan administrator's interpretation of plan terms must be reviewed under the heightened arbitrary and capricious standard described above to determine whether the administrator's

16

interpretation was reasonable.  See McElroy v. Smithkline Beechman Health & Welfare Benefits Trust Plan, 340 F.3d 139, 142 (3d Cir. 2003) (holding that when a plan's language is ambiguous, the plan administrator is authorized to interpret it, and a court "must defer to this interpretation unless it is arbitrary and capricious").

The determination of whether an ERISA plan is ambiguous is a question of law. In re Unisys Corp. Long-Term Disability Plan ERISA Litigation, 97 F.3d 710, 715 (3d Cir. 1996).  "A term is ambiguous if it is subject to reasonable alternative interpretations."  Taylor v. Cont'l Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991).  "In determining whether a particular clause in a plan document is ambiguous, courts must first look to the plain language of [the] document.  If the plain language of the document is clear, courts must not look to other evidence." Gourley, 248 F.3d at 218 (citations omitted).  If no ambiguity exists, the court may not consider extrinsic evidence.  Id.  If the terms are unambiguous, the plan administrators actions are not arbitrary if they are reasonably consistent with the terms.  Id.  If the court determines the terms are ambiguous, the court must then analyze whether the plan administrator's interpretation of the documents is reasonable under the Pinto-standard of review for deference by the court.  Id.[5]

_____

[5]  In arguing that the terms of the policy must be given their plain meaning, Plaintiff relies on a sole out of jurisdiction case from the First Circuit, Wickman v. Northwestern National Insurance Co., 908 F.2d 1077 (1st Cir. 1990).  While the Wickman court's finding that ERISA provisions must be given the plain meaning that comports with the average person's interpretations was adopted by this District Court in

### 4. The Policy Terms Are Not Ambiguous

Defendant argues that life insurance benefits and AD&D benefits are two separate types of benefits.  Plaintiff claims that life insurance benefits referenced in the Policy include both life insurance and AD&D benefits combined in one general benefit. However, the Policy between Wentworth and Defendant makes it clear that life insurance and AD&D benefits are two separate categories of benefits.

The cover letter provided with the Policy states that Defendant will pay all benefits "in accordance with all provisions provided by this Policy for Life and Accidental Death and Dismemberment Insurance."  (Def. Mot. Summ. J., Ex. 0007, 0054.)  The Table of Contents for the Policy has Employee Life Insurance and Accidental Death and Dismemberment Insurance listed separately in two different sections of the Policy.  (Def. Mot. Summ. J., Ex. 0055.)  The section on Life Insurance benefits and the section on AD&D benefits contain separate and distinct categories of eligibility, coverage and payment amounts.  (Def. Mot. Summ. J., Ex. 0064-70.)  The Employee Life Insurance Benefits Provision states that "[t]he amount of Life Insurance is the Employee's amount of insurance shown in Section I, Schedule of Benefits."  (Def. Mot. Summ. J., Ex. 0064.)

---

McLain v. Metropolitan Life Insurance Co., 820 F. Supp. 169, 176 (D.N.J. 1990), the case is not controlling here.  Both Wickman and McLain dealt with cases involving the difficulties in establishing what was meant by the term "accidental death."  However, in the instant case, it is only the plan administrator's construction of the Policy as a whole and what benefits it conferred upon Plaintiff that is at issue.  Additionally, the Third Circuit's post-McLain test for interpreting ERISA provisions is explained, as set forth above, in the Bill Gray/ In re Unisys Corp/ Taylor line of cases.

The AD&D Benefit Provision states that Defendant will pay "the following percentage of Accidental Death and Dismemberment Insurance shown in Section I, Schedule of Benefits that was in force on the date of loss."  (Def. Mot. Summ. J., Ex. 0069.)  Both provisions require the insured to determine the appropriate respective amounts of both life insurance and AD&D insurance by reference to two separate columns.  (Def. Mot. Summ. J., Ex. 0056.)

A plain reading of the Schedule of Benefits sets forth that Life Insurance and AD&D insurance are two separate types of insurance benefits.  In the Schedule of Benefits, under the heading "Life and Accidental Death and Dismemberment Insurance," separate categories of coverage are detailed: one for life insurance benefits amounts and another for AD&D benefits amounts.  (Def. Mot. Summ. J., Ex. 0056.)  The Policy is clear that life insurance and AD&D insurance are two separate benefits and they are not combined into one general lump benefit as Plaintiff suggests.  Therefore, the Court finds that the Policy language is not ambiguous.[6]  Moreover, based on the Policy language, the Court finds that Defendant's benefits decision was not arbitrary and capricious; that is, it

_____

[6]Even when a plan's terms are ambiguous, the Court must uphold the administrator's interpretation if it is reasonable.  Bill Gray, 248 F.3d at 218; see also McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan, 340 F.3d 149, 143 (3d Cir. 2003) (holding that the plan administrator is authorized to interpret the terms and a court must defer to the administrator's interpretation unless it is arbitrary and capricious).  Here, for the reasons stated above, the administrator's interpretation was not without reason, unsupported by substantial evidence, or erroneous as a matter of law.

was not without reason, unsupported by substantial evidence, or erroneous as a matter of law.

### 5.  Effect of Waiver of Premium

Plaintiff asserts that the Waiver of Premium operated to waive premiums for both the insurance and AD&D benefits.  The Waiver of Premium states on the top of the document it is for "Group Life Insurance–Waiver of Premium/ Extended Death Benefit Claim."  (Def. Mot. Summ. J., Ex. 0045.)  The Waiver of Premium provided the amount of insurance coverage applicable to the Waiver of Premium is basic insurance in the amount of $100,000.  (Def. Mot. Summ. J., Ex. 0045.)  In both the July 16, 1999 and August 3, 2001 letters Defendant sent to O'Malley approving the Waiver of Premium, the letters state the Waiver of Premium is only for a life insurance waiver. Moreover, both letters explicitly informed O'Malley that he only had $100,000 in Group Life Insurance in force presently.  The letters note that reduction and termination levels are defined in his policy and employee handbook.

Moreover, only the Life Insurance Benefit Provision section contains a Waiver of Premium Provision.  (Def. Mot. Summ. J., Ex. 0064.)  The AD&D Benefit Provision section, which is separate and distinct from the Life Insurance Benefit Provision, is silent on whether a Waiver of Premium could be executed to extend AD&D benefits.  (Def. Mot. Summ. J., Ex. 0069-70.)  However, the Schedule of Benefits states that the initial monthly premium rates for life insurance and AD&D insurance are two different

20

categories, with two different premium amounts to be determined, rather than one combined premium amount.  (Def. Mot. Summ. J., Ex. 0057.)  The language of both the Waiver of Premium and the Policy provide that a waiver applies only to the premium amounts for life insurance benefits.  The AD&D insurance benefit and premium amount were separate from the life insurance benefit and no Waiver of Premium was executed to waive this separate premium amount.  Therefore, the Waiver of Premium only operated to continue life insurance coverage in the amount of $100,000.

**G.  Plaintiff Has Not Established that Defendant Misrepresented the Policy's Coverage or Arbitrarily and Capriciously Administered the Plan**

        Plaintiff, in section "D" of her Cross Motion for Summary Judgment, cites a District of Ohio case, O'Grady v. Firestone Tire & Rubber Co., 635 F. Supp. 81, 85 (D. Ohio 1986), for the proposition that "a claim may arise based upon the arbitrary and capricious administration of the plan."  (Pl. Cross Mot. Summ. J. at 16.)  As detailed above, Defendant's administration of O'Malley's policy and plan was not arbitrary or capricious.  To the extent Plaintiff is attempting to argue that Defendant's misrepresented the Policy's coverage to Plaintiff and O'Malley, this claim is denied.  First, Plaintiff did not allege in her Complaint any allegations of misrepresentation or equitable estoppel against Defendant.  Second, Plaintiff has not established sufficient material facts to prevail on a summary judgment motion.  An equitable estoppel claim is recognized under ERISA.  29 U.S.C.  § 1132(a)(3); Burstein v. Ret. Account Plan for Employees of

Allegheny Health Educ. & Research Found., 334 F.3d 365, 383 (3d Cir. 2003).  In the

Third Circuit, to "state a cause of action for equitable estoppel under ERISA . . . an

'ERISA plaintiff must establish: (1) a material representation, (2) reasonable and

detrimental reliance upon the representation, and (3) extraordinary circumstances.'"

Burstein, 334 F.3d at 383 (citing Curcio v. John Hancock Mutual Life Ins. Co., 33 F.3d

226, 235 (3d Cir. 1994)).  Extraordinary circumstances involve "acts of bad faith on the

part of the employer, attempts to actively conceal a significant change in the plan, or

commission of fraud."  Burstein (citing Jordan v. Fed. Express Corp., 116 F.3d 1005,

1011 (3d Cir. 1997)).  Plaintiff's claim of misrepresentation fails because she has not

established any grounds for extraordinary circumstances nor reasonable and detrimental

reliance.[7]

---

[7] It does not appear that Plaintiff has alleged a misrepresentation by Defendant. Plaintiff's sole support of the mispresentation claim is the Affidavit of Ms. Evans.  (Pl. Cross Mot. Summ. J. at 17.)  Ms. Evans only notes that during her alleged conversation with Defendant, Defendant informed her that O'Malley's "coverage would remain the same" after his disability and exercise of the Waiver of Premium.  (Pl. Cross Mot. Summ. J., Ex. B.)  Plaintiff then cites Ms. Evans's affidavit where Ms. Evans described what she informed the O'Malleys would be O'Malley's insurance coverage based on her understanding of the conversation with Defendant to establish a misrepresentation by Defendant and thus, an arbitrary and capricious administration of the plan.  No where does Ms. Evans in her affidavit state the term "coverage," as used by Defendant or Ms. Evans, included both life insurance benefits and AD&D benefits.  Additionally, the O'Malleys' understanding of the Policy and Waiver of Premium was stemming from a third-party's understanding of the Waiver of Premium, namely, Ms. Evans.  Moreover, Plaintiff injects the words "life insurance benefits" into Ms. Evans's affidavit in paragraphs 5 and 6 of Plaintiff's Material Statement of Undisputed Facts.  (Pl. Cross Mot. Summ. J. at 2-3.)  Plaintiff twice mis-quoted Ms. Evans's affidavit, inserting the word "life insurance benefits," whereas Ms. Evans only used the word "coverage."

**H.  Attorneys' Fees**

Because Plaintiff did not prevail on her summary judgment motion, the Court will

not consider her request for an award of attorneys' fees.

## III.  CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment [11] will be

granted and Plaintiff's Cross Motion for Summary Judgment will be denied [12].

An accompanying Order will issue this date.


/S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ, U.S.D.J.


DATED:  January 23, 2006

23